IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **AMENDED COMPLAINT** |
| CENTER ONE, LLC, | ) ) | **AND JURY TRIAL DEMAND** |
| Defendant, | ) ) ) | |
| and | ) ) | |
| CAPITAL MANAGEMENT SERVICES, LP, | ) ) ) ) | |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of religion and to provide appropriate relief to Charging Party Demetrius Ford, who was adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission alleges that Defendant Center One, LLC, and Defendant Capital Management Services, LP, subjected Ford to denial of reasonable accommodation of religion and constructive discharge from his employment at Defendants' Beaver Falls, Pennsylvania location because of his religion, Messianic Judaism, in violation of Title VII.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Pennsylvania and other jurisdictions.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC"), is the Agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Center One, LLC, a New York limited liability company (hereinafter "Center One"), has continuously been doing business in the Commonwealth of Pennsylvania, as well as other jurisdictions, and has continuously employed at least 15 employees.

5. At all relevant times, Center One has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

6. Throughout calendar years 2015 and 2016, Center One continuously employed more than 200 employees.

7. At all relevant times, Defendant Capital Management Services, LP, a Delaware limited partnership (hereinafter "CMS") (hereinafter collectively with Center One "Defendants"), has continuously been doing business in the Commonwealth of Pennsylvania, as well as other jurisdictions, and has continuously employed at least 15 employees.

8. At all relevant times, CMS has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

9. Throughout calendar years 2015 and 2016, CMS continuously employed more than 300 employees.

10. Center One and CMS constitute a single "employer" within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

11. More than thirty (30) days prior to the institution of this lawsuit, Charging Party Demetrius Ford filed a charge of discrimination with the Commission alleging that Center One violated Title VII.

12. On July 23, 2019, the Commission issued to Center One a Letter of Determination finding reasonable cause to believe that Center One violated Title VII and inviting Center One to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

13. The Commission engaged in communications with Center One to provide Center One the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14. The Commission was unable to secure from Center One a conciliation agreement acceptable to the Commission.

15. On August 27, 2019, the Commission issued to Center One a Notice of Failure of Conciliation.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

17. Since at least September 2016, Defendants have engaged in unlawful employment practices at their Beaver Falls, Pennsylvania operation and other operations in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

18. Center One and CMS are owned, managed, and/or otherwise operated so as to constitute a single "employer" within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b). In support of this averment, the Commission states the following:

    a. Center One is and has at all relevant times been a wholly owned subsidiary of CMS, its parent company.

    b. At all relevant times, Patti Sue O'Malley was an employee and corporate officer of CMS.

    c. At all relevant times, Patti Sue O'Malley supervised human resources employees of Center One and CMS, including but not limited to Andrea Robel and Heather Altman.

    d. As set forth more fully below, CMS officer Patti Sue O'Malley made the decision to not grant the reasonable accommodation of religion at issue in this action, took other adverse actions against Ford at issue in this action, and otherwise acted in a manner that caused the denial of reasonable accommodation.

4

e. At all relevant times, Julie Fulciniti was an employee and corporate officer of CMS.

f. At all relevant times, Julie Fulciniti supervised employees of Center One and CMS, including but not limited to Patti Sue O'Malley.

g. CMS created Defendants' policy or practice concerning Title VII, including Defendants' policy or practice for administering employees' requests for reasonable accommodations of religion.

h. CMS created Defendants' policy or practice concerning requests for reasonable accommodations that was applied to Ford, which requires that employee requests for reasonable accommodations of religion, such as requests for religious days off, be supported by a certification from a religious leader or religious organization on official letterhead of the religious organization confirming the employee's religion and need for a reasonable accommodation.

i. CMS created Defendants' attendance and progressive-discipline policy.

j. At all relevant times, Defendants maintained interrelated business operations.

k. At all relevant times, Defendants offered the same fringe-benefits packages to some or all of their employees.

l. At all relevant times, Defendants used the same plan administrator for the health-insurance plans offered to some or all of their employees.

m. At all relevant times, Defendants used the same plan administrator for the 401(k) retirement plans offered to some or all of their employees.

n. At all relevant times, Defendants maintained common human-resources operations, including but not limited to common personnel and common policies and practices.

o. At all relevant times, Defendants maintained common time-and-attendance operations, including but not limited to common personnel and common policies and practices.

p. At all relevant times, Defendants maintained common accounting operations, including but not limited to common personnel and common policies and practices.

q. At all relevant times, Defendants maintained common legal operations, including but not limited to common personnel and common policies and practices.

r. At all relevant times, Defendants maintained common management.

s. Defendants have and at all relevant times have had common ownership.

t. Defendants are and at all relevant times have been financially intertwined.

u. Defendants do and at all relevant times have held themselves out to employees and third parties as "CMS Group of Companies."

Count One: Denial of Reasonable Accommodation of Religion

19. Ford held the position of Customer Service Specialist at Defendants' Beaver Falls call center from September 12, 2016, until his constructive discharge on or about October 19, 2016.

20. Ford is an adherent of Messianic Judaism, a religious faith he sincerely held at all relevant times, including throughout the course of his employment by Defendants.

21. At all relevant times, including throughout the course of his employment by Defendants, Ford has sincerely held a religious belief and practice that he is not permitted

to work on certain religious holidays/holy days observed by adherents of the Messianic Jewish faith.

22. On multiple occasions prior to his termination, Ford informed Defendants of his religious identity and his sincerely held religious belief and practice that he cannot work on certain religious holidays/holy days observed by adherents of the Messianic Jewish faith.

23. On or about August 31, 2016, Heather Altman, a human resources official of Defendants, interviewed Ford for employment. In response to an interview question posed by Altman about potential struggles he may face in the position for which he was being interviewed, Ford told Altman that he is a Messianic Jew, that he may be wearing religious headwear (a kippah), and that he would require time off to observe religious holidays, and he then asked if that would pose a problem for his employment. Altman responded that it would not.

24. Defendants subsequently hired Ford. At no time during his employment did Defendants provide Ford with a written policy describing the procedure to be used to request a reasonable accommodation of religion.

25. Ford did not attend work on October 3–4, 2016, in observance of Rosh Hashanah. He called Defendants' attendance hotline regarding those days and, because there was no code to indicate an absence for religious observance, entered the code to indicate an absence for personal reasons.

26. Defendants subsequently issued disciplinary points to Ford pursuant to their attendance policy for his absences on October 3–4, 2016.

27. When Ford returned to work on October 5, 2016, in view of the upcoming Yom Kippur holiday, he completed a Temporary Schedule Change ("TSC") form indicating

that he needed to work from 9:00 a.m. to 5:30 p.m., instead of 12:30 p.m. to 9:00 p.m. as originally scheduled, on October 11, 2016, for personal reasons. He and his supervisor, Shawnrika Vaughn, signed the TSC form.

28. After Ford submitted the TSC form, Andrea Robel, Defendants' Human Resources Generalist, directed that he provide documentation from his religious congregation "on letterhead" confirming the dates of any upcoming religious holidays for which he was requesting time off.

29. Robel's demand for documentation from Ford's congregation was made pursuant to and in conformity with Defendants' ongoing policy or practice of requiring that employee requests for reasonable accommodations of religion, such as requests for religious days off, be supported by a certification from a religious leader or religious organization on official letterhead of the religious organization confirming the employee's religion and need for a reasonable accommodation.

30. Ford was unable to locate his former religious leader because his previous religious congregation had dissolved, and despite his efforts, he was unable to obtain Defendants' requested certification from a prospective congregation.

31. On or before October 7, 2016, in lieu of providing the documentation requested by Defendants, Ford instead provided to Defendants, through Robel, three religious calendars which he obtained from internet sources showing Jewish holidays (one calendar from Jews for Jesus, another calendar from Chabad-Lubavitch, and a third from a Messianic Jewish congregation), as well as an email chain between himself and the leader of a Messianic Jewish congregation, which he was considering joining.

32. On or about October 12, 2016, Ford met with Defendants' personnel at an Employee Review Committee ("ERC") meeting to discuss his absences. In attendance at

8

the meeting were Ford, Robel, Altman, an unidentified male employee and, via conference call, Defendants' Vice President of Human Resources, Patti Sue O'Malley. Defendants' purpose for conducting the meeting was to discuss Ford's absences from work and his request for a reasonable accommodation of religion.

33. VP O'Malley began the ERC meeting by asking Ford, "Are you sure that you can show up today?" She then asked Ford about his religion and observance of religious holidays. Ford responded by identifying his religion and described his belief and need to abstain from work to observe certain religious holidays/holy days of Messianic Judaism.

34. During the ERC meeting, VP O'Malley also stated to Ford that the documentation that he had provided up to the time of the meeting to confirm the need for a religious accommodation was insufficient. O'Malley then reiterated Defendants' requirement that Ford obtain documentation from his congregation confirming the dates of any religious holidays for which he was requesting time off.

35. During the ERC meeting, VP O'Malley also told Ford that he could not take any more days off from work.

36. The religious-holiday calendars that Ford supplied to Defendants and that were in their possession before and during the ERC meeting reflected that October 12, 2016, was Yom Kippur and that Ford's next religious holidays would be taking place in the near future.

37. After the ERC meeting on October 12, 2016, Ford went home instead of performing any labor that day because of his sincerely held religious belief and practice that he was required to refrain from work in observance of Yom Kippur.

38. Thereafter, Defendants disciplined Ford for not working (being absent from work) on October 12, 2016, by assessing Ford an absence point under their attendance and

9

progressive-discipline policy. Under that then-existing policy, an employee in his or her introductory period that accumulated four unexcused absence points was subject to termination.

39. Defendants failed and refused to accommodate Ford's requests for a reasonable accommodation of his sincerely held religious belief and practice of abstaining from work on certain religious holidays/holy days of Messianic Judaism.

40. Defendants failed and refused to exempt Ford from work on days that he was required by his religion to be absent for religious observance or to exempt him from all disciplinary action/attendance points for such absences. Instead, Defendants directed Ford to not take any further days off.

41. At no time did Defendants accept as sufficient the documentation Ford provided concerning his religion and need for days off for religious observance, nor did they offer to accept any alternative forms of documentation. Defendants insisted on a religious leader's or religious organization's certification of Ford's belief and need for a reasonable accommodation as a precondition of providing a reasonable accommodation of Ford's sincerely held religious belief and practice.

42. As set forth more fully in paragraphs 43–48, below, Defendants constructively discharged Ford because of his religion.

Count Two: Constructive Discharge Because of Religion

43. EEOC incorporates by reference all allegations set forth in paragraphs 19–42, above.

44. On or about October 19, 2016, Ford informed Defendants, through Altman, that he was resigning his employment with Defendants effective at the end of the week. Ford did not want to resign at that time.

45. When communicating his intent to resign, Ford told Altman that there were more Jewish holidays soon and that he knew Defendants would discharge him if he took time off to observe those holidays. Altman did not disagree with Ford's statement that Defendants would discharge him for taking additional days off for religious observance. Instead, she reiterated Defendants' requirement that Ford provide a certification from a religious leader/organization of Ford's religious belief and need for religious days off in order to be excused from work those days.

46. Altman told Ford to wait and that they would further discuss his resignation. She also advised him to continue working while she prepared the necessary paperwork. Approximately five to ten minutes later, Altman returned and told Ford that Defendants had terminated him, that he could not work for the remainder of the week, and that he needed to leave immediately. Ford complied, and his employment by Defendants ended that day.

47. Ford felt compelled to resign his employment with Defendants. The reason Ford felt compelled to end his employment and resign was Defendants' refusal to provide him with a reasonable accommodation for his religion in the form of excused days off for religious holidays; Defendants' conduct, including but not limited to their insistence on a religious leader's or religious organization's certification of Ford's religion and need for days off for religious observance reasons that he could not provide; and Ford's resulting belief that we would be discharged.

48. By refusing to provide Ford with a reasonable accommodation for his sincerely held religious belief and practice, Defendants created working conditions sufficiently intolerable that a reasonable person would feel compelled to end their employment.

49. The effect of the practices complained of in paragraphs 19–48, above, has been to deprive Demetrius Ford of equal employment opportunities and otherwise adversely affect his status as an employee because of his religion.

50. The unlawful employment practices complained of in paragraphs 19–48, above, were and are intentional.

51. The unlawful employment practices complained of in paragraphs 19–48, above, were and are done with malice or with reckless indifference to the federally protected rights of Demetrius Ford.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining and restraining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in religious discrimination, including denial of reasonable accommodation of religion, resulting constructive discharges, requiring certification from a religious leader or religious organization as a precondition for granting reasonable accommodations of religion, and any other employment practice which discriminates on the basis of religion.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons with sincerely held religious beliefs, practices, and observances that require accommodation, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendants to make whole Demetrius Ford by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices,

including but not limited to reinstatement with retroactive seniority and benefits and front pay in lieu thereof.

D.     Order Defendants to make whole Demetrius Ford by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 17–51, above, in amounts to be determined at trial.

E.     Order Defendants to make whole Demetrius Ford by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 17–51, above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

F.     Order Defendants to pay Demetrius Ford punitive damages for the malicious and reckless conduct described in paragraphs 17–51, above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Amended Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel

LISA MORELLI
Acting Associate General Counsel

*Signed with authorization*

_____
DEBRA M. LAWRENCE
Regional Attorney
EEOC – Philadelphia District Office

*Signed with authorization*

_____
RONALD L. PHILLIPS
Supervisory Trial Attorney
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, Maryland 21201
Telephone number: (410) 209-2737
Facsimile number: (410) 962-4270
E-mail address: ronald.phillips@eeoc.gov

_____
GREGORY A. MURRAY
Senior Trial Attorney
EEOC – Pittsburgh Area Office
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Telephone number: (412) 588-6907
Facsimile number: (412) 395-5749
E-mail address: gregory.murray@eeoc.gov